*Shawn Albert Franklin v. State of Maryland*, No. 57, September Term, 2019. Opinion by Biran, J.

**WRIT OF ERROR *CORAM NOBIS* – INEFFECTIVE ASSISTANCE OF COUNSEL – PERFORMANCE OF COUNSEL – MOTION FOR MODIFICATION OF SENTENCE UNDER MD. RULE 4-345(e) – REQUEST FOR HEARING DURING FIVE-YEAR PERIOD FOR REVIEW OF RULE 4-345(e) MOTION – "NO ACTION" NOTATION BY SENTENCING COURT –** The Court of Appeals held that it was clear error to find that a sentencing court's notation of "no action" on a defendant's motion for modification of sentence and proposed order, approximately three weeks after the filing of the motion, constituted a denial of the defendant's request for a hearing on the motion and of the motion itself. Rather, under the specific facts of the case, by taking "no action" at that time, the sentencing court deferred consideration of the motion. Defense counsel knew or should have known that the sentencing court took the motion under advisement, and that the sentencing court could still rule on the motion for modification of sentence within five years of the imposition of sentence.

**WRIT OF ERROR *CORAM NOBIS* – INEFFECTIVE ASSISTANCE OF COUNSEL – PERFORMANCE OF COUNSEL – MOTION FOR MODIFICATION OF SENTENCE UNDER MD. RULE 4-345(e) – REQUEST FOR HEARING DURING FIVE-YEAR PERIOD FOR REVIEW OF MOTION –** The Court of Appeals held that, when assessing whether defense counsel performed deficiently for purposes of an ineffective assistance claim, a court may not find *per se* unreasonable performance where counsel, who had filed a motion for modification of sentence that was then taken under advisement by the sentencing court, failed to request (or to renew a request for) a hearing on the motion on the attorney's own initiative within the five-year period for the court to consider the motion.

**WRIT OF ERROR *CORAM NOBIS* – INEFFECTIVE ASSISTANCE OF COUNSEL – PREJUDICE – MOTION FOR MODIFICATION OF SENTENCE – FAILURE TO RENEW REQUEST FOR HEARING DURING FIVE-YEAR PERIOD FOR REVIEW OF MOTION –** The Court of Appeals stated that, in a case where a court finds deficient performance in the failure of an attorney to request a hearing on a Rule 4-345(e) motion that has been held in abeyance, a post-conviction or *coram nobis* court generally should find the requisite prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), and provide the defendant with a reasonable opportunity to notify the court that the defendant wishes the court set the motion in for a hearing, and should also allow the court a reasonable opportunity to hold a hearing, should the court decide to grant the request for a hearing.

Circuit Court for Charles County
Case No. 08-K-09-000811
Argued: March 10, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 57

September Term, 2019

_____

SHAWN ALBERT FRANKLIN

v.

STATE OF MARYLAND

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by Biran, J.
Watts, Hotten and Booth, JJ., concur.

_____

Filed: August 13, 2020

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Under Maryland law, after a criminal defendant is sentenced, the sentencing court in most cases has the authority to reconsider its decision and impose a more lenient sentence. If a defendant wants the court to consider exercising that authority, the defendant must file a motion within 90 days of sentencing in which the defendant asks the court to modify the sentence. Once a defendant has filed a motion to modify the sentence, the sentencing court has five years to consider it. The court may deny a motion for sentence modification without a hearing. However, before granting such a motion and reducing the sentence, the court must hold a hearing at which the defendant, the State, and any victim or victim's representative may address the court concerning the defendant's requested modification.

Not uncommonly, when a defendant files a motion to modify a sentence, the defendant asks the court not to act on it right away. Often, the reason for such a request is that the defendant recognizes that not much has changed in 90 or fewer days since the sentencing hearing, and that the court may well decline to impose a more lenient sentence at that point. Thus, the defendant may prefer to have the court consider the motion later in the applicable five-year period. Perhaps, with the passage of up to five years, the defendant will be able to produce evidence of post-sentencing repentance, self-improvement, cooperation with State officials, and/or successful completion of probation or other conditions imposed by the sentencing court. Such a future showing, the defendant may hope, will persuade the court to impose a more lenient sentence.

This case concerns such a defendant, Shawn Albert Franklin, who was convicted in the Circuit Court for Charles County of reckless endangerment and illegally transporting a

handgun in a vehicle in March 2010. The court sentenced Franklin to 14 days of active jail time and three years of probation. Immediately after pronouncing that sentence, the court said it would not rule out modifying Franklin's sentence to probation before judgment after Franklin completed his period of probation, but that Franklin would have to "work for" such a modification.

In April 2010, Franklin's attorney filed a timely motion for modification of sentence, and asked that the court consider changing the sentence to probation before judgment. In that filing, the attorney requested a hearing on the motion, but also asked the court to defer consideration of the motion until after the conclusion of Franklin's probation. After receiving the motion, in keeping with the attorney's request, the sentencing court noted that it was taking "no action" on the motion. Franklin successfully completed his period of probation, but neither he nor his attorney subsequently asked the sentencing court to set the motion in for a hearing during the remainder of the five-year consideration period. That period expired in March 2015. Franklin subsequently sought to expunge the records of his criminal charges, but because he had not received probation before judgment, he was not entitled to expungement.

After losing his job in 2017 due to his convictions having come to light, Franklin sought a writ of error *coram nobis* that would allow the sentencing court belatedly to hold a hearing and decide his motion for modification of sentence. Franklin claimed that he was entitled to this relief because his attorney provided ineffective assistance of counsel, in violation of the Maryland and United States Constitutions. Specifically, Franklin claimed that his attorney performed deficiently by failing to notify the sentencing court within the

2

applicable five-year period that Franklin was ready to have the court consider the motion for sentence modification. The *coram nobis* court and the Court of Special Appeals denied relief to Franklin. We then agreed to hear Franklin's appeal.

To resolve Franklin's ineffective assistance claim, we must consider the respective responsibilities of a defendant and defense counsel after a court holds a motion for modification of sentence in abeyance. We conclude that it is the attorney's responsibility to ensure that a defendant knows the sentencing court has five years from the imposition of the sentence to consider the motion. However, it is the defendant's decision whether and when to request that the sentencing judge set the motion in for a hearing. We decline to adopt a *per se* rule that an attorney provides constitutionally deficient assistance, where the attorney fails to request (or to renew a request for) a hearing on the motion on the attorney's own initiative within the five-year period for the court to consider the motion. Rather, each such case must be analyzed based on its particular facts.

We further hold that Franklin failed to meet his burden to show that his attorney performed deficiently. The *coram nobis* court did not make a finding that Franklin's attorney failed to advise Franklin about the five-year period to consider a motion for modification of sentence. In addition, the *coram nobis* court found that Franklin never contacted his attorney during the five-year period because he did not suffer any adverse collateral consequences from his convictions until after that period had expired. As a result, Franklin did not instruct his attorney to renew the request for a hearing on the motion for modification of sentence during the five-year period. We therefore conclude that Franklin's attorney did not provide ineffective assistance of counsel.

3

**Background**

**A. Franklin's Crimes, Guilty Plea, and Sentencing Hearing**

On September 24, 2009, Jeremy Elkins was riding his bicycle in Waldorf, Maryland, when Franklin ran him off the road in his SUV. Franklin's wife had told him that her bicycle had been stolen, and Franklin thought that Elkins was riding the stolen bike. After Elkins came to a stop, so did Franklin. Franklin then exited his vehicle, approached Elkins, and accused him of stealing the bicycle. After Elkins denied this accusation, Franklin returned to his car and retrieved a pistol. He then threatened Elkins with the gun and demanded that Elkins accompany him back to where Franklin's wife was at the time. Elkins complied with Franklin's demand. When Franklin's wife saw Elkins and the bicycle, she told Franklin that Elkins was not the man who had stolen her bicycle, and that the bicycle in Elkins's possession was not hers. Elkins then left with his bicycle.

On November 6, 2009, Franklin was charged in an indictment in the Circuit Court for Charles County as a result of his confrontation with Elkins. The indictment charged Franklin with seven offenses, including first-degree assault, second-degree assault, reckless endangerment, and various weapons charges, including illegally transporting a handgun in a vehicle.

On March 5, 2010, Franklin appeared before the Honorable Helen I. Harrington in the Circuit Court for Charles County and, under a plea agreement, entered *Alford* pleas[1] to

---

[1] In an *Alford* plea – derived from *North Carolina v. Alford*, 400 U.S. 25 (1970) – the defendant, while maintaining innocence, agrees to a proffer of stipulated evidence or

the reckless endangerment and transporting-a-handgun charges.[2] The parties informed Judge Harrington that, under the terms of their agreement, they proposed to bind the court to impose a sentence that included a cap of 60 days of active jail time. The written plea agreement signed by Franklin and the State set forth the agreement regarding the 60-day active time cap, and then recited: "There is no other sentencing limitation except that provided by law." Judge Harrington approved the binding plea, telling Franklin that "[t]he Court is agreeing to sentence you to no more than 60 days of active jail time."[3]

On March 22, 2010, Franklin and his retained attorney, Kenneth W. Prien, appeared before Judge Harrington for sentencing. Mr. Prien requested that Judge Harrington impose a sentence of probation before judgment. The State did not object that the binding plea agreement prohibited Judge Harrington from imposing probation before judgment. Nevertheless, Judge Harrington declined Mr. Prien's request, and instead imposed concurrent sentences of three years of incarceration with all but 14 days suspended, three

___

to an agreed statement of facts that provides a factual basis for a finding of guilt. *See Jackson v. State*, 448 Md. 387, 391 n.3 (2016).

[2] *See* Md. Code Ann., Crim. Law ("CR") § 3-204(a)(1) (2002) (reckless endangerment); *id.* § 4-203(a)(1)(ii) (2002) (transporting a handgun in a vehicle).

[3] Under Maryland Rule 4-243(a)(1)(F), the State and the defendant may enter into a plea agreement proposing a particular sentence, disposition, or other judicial action. Under Rule 4-243(c), if the parties have reached this sort of plea agreement, they must advise the judge of the proposed terms of the agreement when the defendant pleads guilty. The judge may accept or reject the plea at that time. If the judge accepts the guilty plea, the judge may approve the agreement or defer decision as to its approval or rejection to a later date. If the judge approves the plea agreement, "the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement." *Id.* § 4-243(c)(3).

5

years of unsupervised probation, a $500 fine, and 24 hours of community service. The other five charges were disposed of by entries of *nolle prosequi.*

After announcing the sentence, Judge Harrington advised Franklin of his post-sentencing rights, during which Judge Harrington and Franklin had the following exchange:

THE COURT: [Y]ou can file a motion to revise this sentence, that has to be filed within 90 days. If you successfully complete the terms of probation I am not ruling out probation before judgment. That would keep your record clean. But you're going to have to work for that.

FRANKLIN: Yes Ma'am.

THE COURT: Any questions, sir?

FRANKLIN: No Ma'am.

. . . .

THE COURT: All right. And here's the probation form. Okay, I usually ask the Clerks to write on their docket sheet that I'll reconsider for probation before judgment and that way when I look at the file again I'm going okay, I said I would do that.

The docket entry for Franklin's sentencing hearing stated, among other things, "[Defendant] advised of post sentencing rights…. Court will reconsider for probation before judgment."

6

**B. The Motion for Modification of Sentence**

On April 1, 2010, Mr. Prien filed a motion under Maryland Rule 4-345(e),[4] requesting that Judge Harrington reconsider the sentence.[5] After five paragraphs detailing the charges against Franklin, his guilty pleas, and the sentences that Judge Harrington had imposed, the motion further recited:

> 6. That Judge Harrington stated that she would consider Probation Before Judgment in the future.
>
> 7. That Defendant requests that this Motion for Reconsideration not be denied outright, but asks for reconsideration for a possible Probation Before Judgment at the conclusion of his probationary period.

The motion for reconsideration appended a proposed order that included the following text:

> Upon consideration of the foregoing Motion for Reconsideration it is on this _____ day of _____, 2010, in the Circuit Court for Charles County, Maryland,
>
> ORDERED, that this motion be set in for hearing on the ____ day of _____, 2010; or in the alternative that, _____ _____.
>
> ORDERED, that the Motion in the above captioned matter be kept under advisement.

---

[4] Rule 4-345(e) provides in pertinent part: "Upon a motion filed within 90 days after imposition of a sentence …, the court has revisory power over the sentence except that it may not revise the sentence after the expiration of five years from the date the sentence originally was imposed on the defendant and it may not increase the sentence." Md. Rule 4-345(e)(1). A court considering a motion under Rule 4-345(e) may deny the motion without a hearing. *See id.* § 4-345(e)(2). However, the court may grant such a motion "only on the record in open court, after hearing from the defendant, the State, and from each victim or victim's representative who requests an opportunity to be heard." *Id.* § 4-345(f).

[5] In this opinion, we refer to a motion filed under Rule 4-345(e) interchangeably as a motion for "modification" of sentence, a motion for "reconsideration" of sentence, or as a "Rule 4-345(e) motion."

The proposed order included a blank line for the judge to sign if she decided to do so.

Under Rule 4-345(e)(1), Judge Harrington had five years from March 22, 2010 (the date of imposition of sentence), to modify Franklin's sentence if she saw fit to do so. On April 20, 2010, without filling in any of the blank spaces on the proposed order, Judge Harrington handwrote "no action" on both the motion for sentence modification and the proposed order.

Franklin successfully completed his period of probation, paid all court costs, and completed his court-ordered community service. Neither Franklin nor Mr. Prien renewed the request for a hearing on the pending Rule 4-345(e) motion following the completion of Franklin's probation. Judge Harrington took no further action on that motion.

**C. Franklin's Petition for Expungement**

On October 7, 2015, Franklin filed a petition for expungement in the Circuit Court for Charles County relating to his arrest and charges for the incident involving Elkins. In his petition for expungement, which he filed *pro se*, Franklin inaccurately stated that all the charges had resulted in entries of *nolle prosequi*. As discussed above, Franklin was convicted and sentenced on two of the charges. This rendered him ineligible for expungement.[6] The State filed an objection to the petition for expungement on this basis.

On June 28, 2016, Judge Harrington held a hearing on Franklin's petition for expungement. By the time of the hearing, Franklin was again represented by counsel, but not by Mr. Prien. Rather, an attorney from the Office of the Public Defender represented

---

[6] *See* Md. Code Ann., Crim. Proc. ("CP") § 10-105 (2008).

Franklin at this hearing. Franklin's new counsel requested that Judge Harrington take no action at that time on the petition for expungement so that his office first could file a petition for a writ of error *coram nobis* on behalf of Franklin, based on the failure of Mr. Prien to file a motion for reconsideration of sentence. Judge Harrington replied that the motion for reconsideration "was filed. They just didn't request a hearing." Judge Harrington stated that the motion was "still, theoretically pending." Judge Harrington agreed to the request to take no action at that time on the petition for expungement.

## D. The *Coram Nobis* Proceeding and Appeal

On April 26, 2017, on behalf of Franklin, the Office of the Public Defender filed a petition for a writ of error *coram nobis* in the Circuit Court for Charles County. In the petition, Franklin alleged that Mr. Prien provided ineffective assistance of counsel by "failing to request a hearing in a timely manner on the motion for reconsideration of sentence." Franklin alleged that Mr. Prien's failure to request a hearing had resulted in the loss of an opportunity to have his sentence modified to probation before judgment and to have his charges expunged. Franklin further alleged that his reckless endangerment and transporting-a-handgun convictions had caused him to suffer collateral consequences sufficient to support the grant of *coram nobis* relief. Specifically, Franklin alleged that, although he had been an exemplary employee at Essence Dental Care ("Essence"), Essence terminated him due to his convictions.

The State opposed Franklin's petition for *coram nobis* relief, arguing that Mr. Prien had not provided ineffective assistance of counsel. The State also contended that Franklin

9

had made an insufficient showing of a significant collateral consequence as a result of Mr. Prien's alleged error.

On November 2, 2017, the parties appeared for a hearing in the Circuit Court for Charles County before the Honorable William R. Greer, Jr., sitting as the *coram nobis* court. Franklin was represented at that hearing by another attorney from the Office of the Public Defender.

Franklin was the only witness at the *coram nobis* hearing. He testified that Mr. Prien did not tell him that there was a five-year time limit for modification of his sentence, and that he did not know about the five-year time limit as late as October 2015, when he filed his petition for expungement. Regarding his employment at Essence, Franklin testified that he was already employed by Essence as a dental assistant when he pled guilty and was sentenced in 2010. Franklin further testified that he received several promotions at Essence. In 2011, he was promoted to Lead Dental Assistant. After attending management seminars and receiving additional training, Franklin became Essence's Clinical Manager in 2012. He subsequently was promoted to the position of Clinical and Inventory Manager, in which he managed the overall operations of the dental clinic.

Franklin testified that, sometime in 2016, Essence "hired a new HR company" that conducted background checks on all employees. In the course of this process, his convictions came to light, eventually leading Essence to terminate his employment in 2017.

After hearing closing arguments, the *coram nobis* court denied Franklin's petition. The court held that Franklin had not established that Mr. Prien provided ineffective assistance of counsel. The court found that Mr. Prien requested a hearing on the motion for

10

reconsideration of Franklin's sentence, and that Judge Harrington considered that request and took no action. Regarding Franklin's claim that he had not known about the five-year time limit for the court to modify his sentence, the court stated: "Whether Mr. Prien told you about the five years or not, I have no reason to doubt you. I don't know. Um…he may not have." Regardless, the court found (addressing Franklin), "[y]ou weren't affected for five years. You never contacted the attorney until after that." The court also stated that, given the evidence presented at the hearing, the court could not say that Judge Harrington would have modified Franklin's sentence to probation before judgment, had Judge Harrington held a hearing within the five-year period.

Alternatively, the court ruled that Franklin failed to show that he suffered significant collateral consequences as a result of Mr. Prien's alleged ineffectiveness.

Franklin appealed the denial of his *coram nobis* petition to the Court of Special Appeals. In an unreported opinion, the intermediate appellate court affirmed the *coram nobis* court's denial of Franklin's petition. 2019 WL 4131948 (Aug. 30, 2019). The Court of Special Appeals read the *coram nobis* court's ruling as making a factual finding that Judge Harrington's notation of "no action" constituted a denial of the hearing request. The Court of Special Appeals found no clear error in this finding. As a result, the Court of Special Appeals concluded that Mr. Prien was under no obligation to renew the request for a hearing during the remainder of the five-year period, and therefore, did not provide Franklin with ineffective assistance of counsel.

Franklin petitioned this Court for a writ of *certiorari*, asking us to review the following question (which we paraphrase slightly here):

11

Is it ineffective assistance of counsel where defense counsel includes in a timely filed motion for sentence modification a request for a hearing accompanied by a request that the matter be kept under advisement, but after the motion is kept under advisement, never renews the request for a hearing prior to the expiration of the five-year period for consideration of the motion?[7]

On December 10, 2019, we granted Franklin's petition for *certiorari.* 466 Md. 512 (2019).

## II

## <u>Standard of Review</u>

A petition for *coram nobis* relief is "available to raise fundamental errors in attempting to show that a criminal conviction was invalid under circumstances where no other remedy is presently available and where there were sound reasons for the failure to seek relief earlier." *State v. Smith*, 443 Md. 572, 597 (2015) (cleaned up). A writ of error *coram nobis* is an "extraordinary remedy justified only under circumstances compelling such action to achieve justice." *Id.* (cleaned up).

A petitioner is entitled to *coram nobis* relief

if and only if: (1) the petitioner challenges a conviction based on constitutional, jurisdictional, or fundamental grounds, whether factual or legal; (2) the petitioner rebuts the presumption of regularity that attaches to the criminal case; (3) the petitioner faces significant collateral consequences from the conviction; (4) the issue as to the alleged error has not been waived or finally litigated in a prior proceeding, absent intervening changes in the applicable law; and (5) the petitioner is not entitled to another statutory or common law remedy (for example, the petitioner cannot be incarcerated in a State prison or on parole or probation, as the petitioner likely could then petition for post-conviction relief).

---

[7] In his question presented, Franklin also specifically requested that we review this case in comparison to a published Court of Special Appeals decision, *Moultrie v. State*, 240 Md. App. 408 (2019). We discuss *Moultrie* at length below.

*Jones v. State*, 445 Md. 324, 338 (2015) (cleaned up). This Court reviews the denial of

*coram nobis* relief for abuse of discretion. *State v. Rich*, 454 Md. 448, 470-71 (2017). In

applying that standard, we do not disturb the *coram nobis* court's factual findings unless

they are clearly erroneous, but we review the court's legal determinations without

deference. *Id.*

The only point in dispute before us is whether Franklin received ineffective

assistance of counsel.[8] That inquiry presents a mixed question of fact and law. *See State v.*

*Sanmartin Prado*, 448 Md. 664, 679-80 (2016). The reasonableness of counsel's conduct

and whether a defendant suffered any prejudice as a result of alleged deficient performance

are questions of law. Thus, we exercise our "own independent judgment" and "evaluate

anew the findings of the [*coram nobis*] court" as to these questions. *Id.* (citation omitted).

### III

### Discussion

The Sixth Amendment to the United States Constitution and Article 21 of the

Maryland Declaration of Rights entitle criminal defendants to the effective assistance of

counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Sanmartin Prado*, 448 Md.

at 681-82. To prevail in an ineffective assistance claim, a defendant must establish two

things: "First, the defendant must show that counsel's performance was deficient. This

requires a showing that counsel made errors so serious that counsel was not functioning as

---

[8] The Court of Special Appeals did not consider the *coram nobis* court's alternative basis for denial of the petition, that is, Franklin's failure to demonstrate that he suffered significant collateral consequences. That question is not before us.

the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

With respect to the performance prong of this test, the defendant must show that counsel's actions or omissions fell "outside the wide range of professionally competent assistance." *Id.* at 690. We "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* In this regard, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689-90.

As to the prejudice component, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Sanmartin Prado*, 448 Md. at 682.

Franklin contends that Mr. Prien provided constitutionally deficient assistance by failing to inform the sentencing court after Franklin successfully completed his probation that Franklin was ready to have the court consider his motion for sentence modification. Franklin also claims that he suffered prejudice as a result of Mr. Prien's alleged error, specifically, the loss of the opportunity for Judge Harrington to consider whether to hold a hearing on Franklin's motion within the five-year consideration period and to grant the

requested modification of sentence at such a hearing. We conclude that Franklin failed to meet his burden to establish ineffective assistance of counsel.

### A. Franklin's Claim of Ineffective Assistance Fails on the Performance Prong of the *Strickland* Test.

1. <u>Mr. Prien Concluded, or Should Have Concluded, That Judge Harrington Deferred Consideration of the Motion for Modification of Franklin's Sentence.</u>

We first consider the Court of Special Appeals' reasoning in affirming the denial of Franklin's petition for *coram nobis* relief. In his petition, Franklin claimed that Mr. Prien was constitutionally ineffective by failing to request a hearing on the Rule 4-345(e) motion in a timely manner. The *coram nobis* court found that the motion and proposed order, in combination, requested a hearing on the Rule 4-345(e) motion. Franklin does not challenge this finding on appeal. However, to the extent the *coram nobis* court found that Judge Harrington's notation of "no action" constituted a denial of the request for a hearing, Franklin contends this finding is clearly erroneous. The Court of Special Appeals held otherwise, and therefore concluded that Mr. Prien did not perform deficiently by failing to renew the request for a hearing at a later date.

We agree with the premise of the Court of Special Appeals' holding that, if Judge Harrington denied the request for a hearing when she wrote "no action" on the motion and proposed order, Mr. Prien reasonably could have concluded that Judge Harrington had effectively denied the motion. As noted above, a court can only modify a sentence under Rule 4-345(e) after conducting a hearing in open court at which the defendant, the State, and any victims or victim representatives may be heard. Thus, the denial of a hearing on a Rule 4-345(e) motion is tantamount to the denial of the motion itself.

15

However, we do not believe that the "no action" notation constituted a denial of the request for a hearing. Nor could Mr. Prien reasonably have concluded from the "no action" notation that Judge Harrington had denied the request for a hearing.

At the sentencing hearing on March 22, 2010, immediately after advising Franklin of his right to file a motion for modification of sentence within 90 days, Judge Harrington told Franklin: "If you successfully complete the terms of probation I am not ruling out probation before judgment. That would keep your record clean. But you're going to have to work for that." A moment later, Judge Harrington explained: "I usually ask the Clerks to write on their docket sheet that I'll reconsider for probation before judgment and that way when I look at the file again I'm going okay, I said I would do that." Indeed, the docket entry for the sentencing hearing included a notation that Franklin was "advised of post sentencing rights…. Court will reconsider for probation before judgment."

In the motion that Mr. Prien filed on behalf of Franklin on April 1, 2010, Mr. Prien noted that Judge Harrington had "stated that she would consider Probation Before Judgment in the future." Mr. Prien therefore requested that the motion "not be denied outright," but instead requested "reconsideration for a possible Probation Before Judgment at the conclusion of [Franklin's] probationary period." At the end of the proposed order that Mr. Prien appended to the motion, he included the proposed relief that "the Motion in the above captioned matter be kept under advisement."

In these circumstances, we believe the only reasonable interpretation of Judge Harrington's April 20, 2010 "no action" notations on the motion and proposed order is that Judge Harrington deferred consideration of the request for a hearing and of the motion

16

itself. There is no basis to conclude that Judge Harrington had changed her mind by April 20, 2010, about being willing to reconsider Franklin's sentence after the conclusion of his period of probation. Indeed, when she presided over the hearing on Franklin's expungement petition in 2016, Judge Harrington stated that "[t]hey … didn't request a hearing" on the motion for modification of sentence, and that the motion was "still, theoretically pending." Had Judge Harrington meant to forever deny Franklin a hearing on the motion on April 22, 2010, we believe she would have rejected Mr. Prien's request to hold the motion under advisement simply by denying the motion. Judge Harrington did not do so. *Compare Montgomery v. State*, 405 Md. 67, 71 (2008) (where the circuit court handwrote "No decision" on Rule 4-345(e) motion approximately three weeks after it was filed and took no further action on it, observing that the record did not reflect that the circuit court "ever ruled" on the motion).

Thus, to the extent the *coram nobis* court found that Judge Harrington denied the request for a hearing by entering her "no action" notations, we conclude that finding is clearly erroneous. Moreover, we do not believe that Mr. Prien reasonably could have interpreted the "no action" entries as a denial of a hearing and, therefore, a denial of Franklin's motion for modification of sentence. To the contrary, given Judge Harrington's comments at the sentencing hearing and Mr. Prien's request to keep the motion under advisement, the only reasonable conclusion Mr. Prien could have drawn from the "no action" entries was that Judge Harrington did precisely what Mr. Prien had asked her to do: keep Franklin's motion under advisement.

It follows that Judge Harrington's "no action" entries do not resolve this appeal. Mr. Prien either concluded, or should have concluded, that Judge Harrington was keeping the motion for modification under advisement pending Franklin's completion of his probation. Thus, we must consider whether Mr. Prien's failure to renew the request for a hearing between the time Franklin completed his period of probation, and the expiration of the five-year period for consideration of a Rule 4-345(e) motion, constituted deficient performance under the Sixth Amendment and Article 21.

2. <u>Franklin Did Not Meet His Burden to Show Deficient Performance</u>.

Franklin contends that an attorney provides constitutionally deficient representation *per se* where: (1) the attorney files a timely motion for modification of sentence; (2) the sentencing court takes the motion under advisement; and (3) the attorney fails to request (or renew a request for) a hearing on the motion within the five-year period under Rule 4-345(e) for the sentencing court to consider the motion.

We decline to adopt Franklin's suggested *per se* rule. Rather, we hold that a court must assess a claim of deficient attorney performance in this context based on the specific facts and circumstances of the case before it. Applying that analysis to this case, we conclude that Franklin failed to show that Mr. Prien acted unreasonably by not renewing the request for a hearing within the five-year period.

### a. *Franklin's Suggested Bright Line Rule Is Unwarranted.*

Franklin argues that *State v. Flansburg*, 345 Md. 694 (1997), compels the conclusion that an attorney who fails to renew a request for a hearing on a Rule 4-345(e) motion, before the expiration of the five-year period for consideration of the motion, *per se* provides constitutionally deficient representation. We disagree.

In *Flansburg,* this Court held that a defendant has a right under Maryland law "to the effective assistance of counsel in connection with his [or her] request to file a motion for modification of the [] sentence." 345 Md. at 703. In that case, after Flansburg was sentenced, he sent his attorney two timely written requests that the attorney file a motion for sentence modification. The attorney failed to file the requested motion. *Id.* at 696. Flansburg sought postconviction relief, contending that, by failing to timely file the requested motion and thereby forfeiting the opportunity to have the court reconsider Flansburg's sentence, his attorney provided ineffective assistance of counsel. *Id.* at 697. This Court agreed that the attorney's failure to comply with Flansburg's express request constituted deficient performance. *Id.* at 705.

In this case, after Franklin completed his period of probation, he did not ask or instruct Mr. Prien to renew the prior request for a hearing on the motion for modification of sentence. Indeed, Franklin never contacted Mr. Prien during the five-year period after the sentencing hearing. Thus, we are not faced with a situation that is analogous to *Flansburg*. Rather, Franklin argues for a bright line rule that an attorney, *on his or her own initiative*, must make or renew a request for a hearing on a motion for modification of sentence being held under advisement, prior to the expiration of the five-year period. In

19

support of his position, Franklin relies primarily on the Court of Special Appeals' opinion in *Moultrie v. State*, 240 Md. App. 408, *cert. denied*, 466 Md. 208 (2019).

In *Moultrie*, a 16-year-old defendant, Tevin Moultrie, pled guilty to second-degree murder. The court sentenced Moultrie to 30 years in prison. 240 Md. App. at 413-14. Moultrie's attorney then advised Moultrie on the record of several post-sentencing rights, including the right to move the sentencing court to modify the sentence that the court had just imposed. The attorney told Moultrie: "You have 90 days from today to file a motion for modification. All of that must be in writing. I will file it for you, and … maybe the Court could … hold it *sub curia*.[9] Then maybe in a little while, in a few years, maybe we can hopefully come back and show the Court all the positive things you've done. Okay, sir?" *Id.* at 414. After Moultrie said he understood, his attorney continued: "Mr. Moultrie, whatever you do, recognize you still are only 17 years old.[10] You've already been in almost two years. Okay sir? Recognize that if you continue to do the positive things that you do, and show the Court the positive, that you are going to be an asset to society, that maybe at that point in time, down the road, we can hopefully have this matter brought back in." *Id.*

---

[9] "*Sub curia*" is a Latin phrase that means "under law." In Maryland, when a court says that it will hold a matter *sub curia*, the court means that it is ordering the "matter to be held pending resolution due to a legal requirement (a procedure, rule or statutory requirement that prevented the finality of the matter)." Glossary of Court Terms, https://mdcourts.gov/reference/glossary#S (accessed on July 27, 2020), archived at https://perma.cc/TQ3W-Y89X. In this opinion, we use the phrases "under advisement," "in abeyance," and "*sub curia*" interchangeably.

[10] Moultrie was actually six weeks short of his seventeenth birthday on the day he was sentenced. *Id.* at 414.

20

Moultrie's attorney filed a timely motion for modification of sentence under Rule 4-345(e). In the motion, counsel asked that the court hold it *sub curia*, and that the court "[g]rant a hearing upon petition of counsel[.]" *Id.* at 415. As the Court of Special Appeals observed, the sentencing court "evidently agreed to hold the motion *sub curia*, because no further action was taken on it." *Id.*

Moultrie's attorney did not file a "petition" for a hearing on the motion before the five-year deadline ran. *Id.* Moultrie subsequently filed a petition for post-conviction relief, alleging that his attorney provided ineffective assistance of counsel by failing to secure a ruling during the five-year period. At the post-conviction hearing, Moultrie introduced no evidence that he had asked his attorney to request a hearing or a ruling on the motion prior to the expiration of the five-year period. *See id.* at 422.

After the post-conviction court denied Moultrie's petition, the Court of Special Appeals reversed. The court found significant that Moultrie was a teenager at the time counsel filed the motion for modification of sentence:

> In our view, it is completely unrealistic to expect a teenaged defendant to understand that he cannot count on his attorney to advise him about when it would be best to request a hearing on a motion to modify or reduce a sentence. It is equally unrealistic to expect such a defendant to understand that a hearing will occur only if he himself initiates the process. It is just as unrealistic to expect such a defendant to have an innate understanding that he will lose the right to a hearing unless he does something to ensure that it occurs within five years from his sentencing. It is far more reasonable to expect that a defendant will rely on counsel both to advise him about when a hearing should be requested and to request the hearing before the running of any deadlines.

*Id.* at 423. Analogizing Moultrie's case to *State v. Shoemaker*, 225 Md. 639, 641-42 (1961), in which this Court ordered a belated appeal after the criminal defendant's original appeal

21

had been dismissed because of his attorney's failure to transmit the record, the Court of Special Appeals reasoned: "Just as it is insufficient for an attorney simply to note an appeal, so too is it insufficient for an attorney simply to file a motion for the modification or reduction of a sentence. Just as an attorney must take steps to ensure that an appeal is heard (by transmitting the record and filing a brief), so too must an attorney take steps to ensure that motion for modification or reduction of a sentence is heard, by requesting a hearing before the five-year deadline runs." *Moultrie*, 240 Md. App. at 424.

To the extent *Moultrie* creates a bright line rule that an attorney must, on his or her own initiative, make or renew a request for a hearing on a motion for modification of sentence being held under advisement, we disagree with the reasoning of the Court of Special Appeals.

In general, bright lines concerning what constitutes constitutionally deficient performance are disfavored. *See Strickland*, 466 U.S. at 688 (holding that "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances"); *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000) (rejecting a *per se* rule that an attorney is ineffective if the attorney fails to file a notice of appeal in a criminal case, because such a rule is inconsistent with "the circumstance-specific reasonableness inquiry required by *Strickland*"); *State v. Borchardt*, 396 Md. 586, 603, 604 (2007) (observing that "[t]he deficient performance inquiry includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time," and that the requisite "standard of reasonableness spawns few hard-edged rules") (internal quotation marks and citation omitted).

22

The bright line rule this Court established in *Flansburg* is appropriate because a defendant who requests that counsel file a Rule 4-345(e) motion reasonably relies upon counsel to do so. An attorney's failure to file such a motion after being asked to do so cannot be considered a strategic decision; rather, such a failure "reflects inattention to the defendant's wishes," *Flores-Ortega*, 528 U.S. at 477, and is *per se* unreasonable.

The bright line that *Moultrie* draws, however, goes too far. We do not believe it is reasonable in all cases to require a criminal defense attorney, on his or her own initiative, to request a hearing on a motion for modification of sentence that has been held under advisement. As discussed further below, in many cases, absent an instruction by the defendant to request that the court take up such a motion during the five-year period, an attorney will not perform deficiently if the attorney fails to make that request on the attorney's own initiative.

However, we do see the need for a different bright line rule regarding the five-year period. An attorney must ensure that his or her client knows there is a five-year period for consideration of a motion for modification of a sentence. If a defendant is not advised of the five-year period, the defendant may incorrectly believe that he or she has an unlimited amount of time to engage in rehabilitative efforts, and will neglect to notify the court (either through counsel or *pro se*) during the five-year period that the defendant wishes the court to consider a pending motion for modification.

We recommend that sentencing courts add the five-year consideration period regarding a motion for sentence modification to the post-sentencing rights that they (and/or defense counsel) advise defendants about on the record following the imposition of a

23

sentence. However, if the defendant does not receive such an advisement during the sentencing hearing, defense counsel must advise the defendant, either before or after the sentencing hearing, that the sentencing court will have five years from the imposition of sentence to consider a motion to modify the sentence. If a defendant, whose timely motion was taken under advisement, proves that he or she failed to request a hearing within the five-year period because defense counsel neglected to ensure that the defendant was advised of the five-year consideration period, that factual finding by a post-conviction or *coram nobis* court will suffice to show that defense counsel performed deficiently under the Sixth Amendment and Article 21.[11]

Assuming a defendant is properly advised of the existence of the five-year period, it is not reasonable to require defense counsel, in every case where a court has taken a Rule 4-345(e) motion under advisement, to request (or renew a request) for a hearing within the five-year period on the attorney's own initiative.

First, in many instances, the attorney will not maintain an appearance in the case for much of the five-year period following sentencing. Under Maryland law, in general, "the appearance of an attorney-at-law in any case before a court in the State terminates automatically on the expiration of an appeal period[12] during which no party enters an

---

[11] If the defendant is not advised of the five-year period on the record at the conclusion of the sentencing hearing, it would behoove defense counsel to put a note in the case file documenting that the attorney advised the defendant of the five-year period contemporaneous with the filing of a Rule 4-345(e) motion, or at another time either before or after the sentencing hearing.

[12] Given that an attorney is required to file a post-sentencing motion under Rule 4-345(e) if a client so requests within 90 days of sentencing, *Flansburg*, 345 Md. at 704, we

24

appeal from a final judgment." Maryland Code Ann., Cts. & Jud. Proc. ("CJP") § 6-407 (2013).[13] Another statute provides that, for purposes of cases where an indigent defendant is represented by the Office of the Public Defender or a panel attorney, such representation "continue[s] until the final disposition of the case or until the assigned attorney is relieved by the Public Defender or order of the court in which the case is pending." CP § 16-205 (2018 Repl. Vol.). "Final disposition of the case" means the point "where the judgment of conviction was rendered, the availability of (final) appeal exhausted, and the time for petition for certiorari had elapsed." *Laquay v. State*, 16 Md. App. 709, 719 (1973) (internal quotation marks and citation omitted); *see also Terry v. Warden, Md. Penitentiary*, 243 Md. 610, 612 (1966) (final disposition in a criminal case is "the point of time when the courts are powerless to provide a remedy for the defendant on direct review"). While these statutory provisions do not prohibit an attorney from assisting a defendant in requesting a hearing or a ruling on a Rule 4-345(e) motion that the attorney filed years earlier, the prior

---

read CJP § 6-407's reference to the "expiration of an appeal period," with respect to a criminal case, to mean the later of: (1) 30 days after entry of final judgment on the docket, *see* Md. Rules 8-202(a) & (f); or (2) 90 days after the date the sentence was imposed.

[13] Franklin argues that the intent of CJP § 6-407 is to automatically terminate the appearance of an attorney in a case where no appeal has been filed, not to automatically terminate the attorney-client relationship. We agree. Nevertheless, we find this statute significant to our analysis of reasonableness here. Given that an attorney's appearance in a criminal case (where no appeal has been filed) typically will terminate by operation of law for all purposes no later than 90 days after sentencing, it is difficult to imagine that a terminated attorney would nevertheless be permitted, let alone required, to represent the defendant in subsequent proceedings in the case without the defendant's knowledge and express consent.

termination of the attorney's representation and appearance in the case is a factor that militates against the bright-line rule for which Franklin advocates.[14]

Second, there are a host of variables that may affect the determination of reasonableness in this context. One such variable is the passage of time. It is not reasonable to expect a criminal defense attorney in every case to initiate contact with a defendant, who has been out of touch for several years, in order to determine whether the defendant would like to request a hearing on a motion that has been held under advisement. While the attorney likely will have had hundreds or perhaps even thousands of other cases to attend to before the expiration of the five-year period, the defendant has only his or her case to be concerned about. In addition, for all a defendant knows if he or she has failed to remain in contact with defense counsel, counsel may have died or retired from the practice of law

---

[14] As Franklin notes, Maryland Rule 4-214(b) states that representation by appointed counsel "extends to … motions for modification or review of sentence." Thus, in *Flansburg*, we observed that Rule 4-214(b) "seems to require representation by the Public Defender with regard to any and all timely motions for modification of sentence." *Flansburg*, 345 Md. at 702. The Court also noted that, "on equal protection principles, … a person with means to obtain his own lawyer has a right to representation by his own counsel which is equally as broad as an indigent's right under the Public Defender Act." *Id.* at 700 n.4. While both appointed counsel and retained counsel, therefore, are required to file a motion for modification of sentence within 90 days of sentencing if a defendant so requests, we do not read Rule 4-214(b) to further extend the "appeal period" referred to in CJP § 6-407, or to further extend the time for "final disposition" referred to in CP § 16-205, to include the five-year period for consideration of a motion for sentence modification. Indeed, Rule 4-214(b) provides that "[t]he representation of appointed counsel does not extend to the filing of subsequent discretionary proceedings including petition for writ of certiorari, petition to expunge records, and petition for post-conviction relief." A hearing on a Rule 4-345(e) motion is a "subsequent discretionary proceeding" that follows the mandatory filing (if requested by the defendant) of the motion. Moreover, it would be odd not to require an attorney to represent a defendant in filing a petition for *certiorari*, but years after such filing of a *certiorari* petition, to require the attorney to represent the defendant for purposes of renewing a request for a hearing on a Rule 4-345(e) motion.

26

during the five-year period. Thus, the passage of almost five years with no effort by a defendant to remain in contact with an attorney may weigh heavily toward a finding that the attorney did not perform deficiently by failing to request a hearing on the attorney's own initiative. On the other hand, if a defendant has been in regular contact with the attorney while serving a jail sentence or completing a period of probation, or if the attorney knows that only a short delay after sentencing is anticipated before the defendant will be ready to ask for a hearing, it may be reasonable to expect the attorney at least to initiate a consultation with the defendant about whether it would be fruitful to request a hearing on the pending motion.

Another variable is the attorney's knowledge of the particular circumstances of the defendant's post-sentencing conduct and rehabilitation. In this case, Judge Harrington commented that she would not rule out a sentence modification after the conclusion of Franklin's probationary period, but that Franklin would need to "work for it." A defendant almost always will be in a better position than the attorney to know what the defendant has done to "work for" a sentence modification during the five years following sentencing. An attorney may have no idea whether a defendant has successfully completed probation, maintained employment, and/or performed good works, or conversely, whether a defendant has been charged with or convicted of a subsequent crime. It is not reasonable to expect an attorney to track a former client's post-sentencing progress where the defendant makes no effort keep the attorney informed. However, if the defendant has been keeping the attorney informed of his or her progress through the five-year period, it may

27

be unreasonable for the attorney to fail to initiate a conversation with the defendant about whether and when to request that the court take up the pending motion.

Yet another variable is any specific arrangement or understanding the attorney and client may have reached concerning what the attorney's involvement will be after the motion for modification of sentence has been filed. If the attorney is privately retained and the defendant signed an engagement letter clearly stating that the attorney will have no obligation to represent or advise the defendant with respect to any post-sentencing matters after filing a motion for modification of sentence, then it may not be constitutionally deficient performance for an attorney to take no further action of any kind with respect to a Rule 4-345(e) motion that has been held in abeyance.[15] On the other hand, if, after the court holds the motion in abeyance, an attorney assures a defendant that the attorney will ask for a hearing to be set in prior to the expiration of the five-year period, it may well be deficient representation if the attorney fails to follow through on that pledge. In other words, a court should consider whether there is evidence that shows there was a meeting

---

[15] For this reason, and because of the statutes discussed above that terminate an appearance and/or representation by operation of law, we do not believe that a bright line rule of deficient performance is appropriate where an attorney disregards a former client's request to ask the court to set in a hearing on a motion that has been held in abeyance. Nor do we rule out a possible finding of deficient performance in such a situation. Regardless, we would hope and expect that an attorney who declines to further assist a former client in this regard will clearly communicate that decision to the client so that the client is not left with the misunderstanding that the attorney will be requesting a hearing. And, of course, there is no bar to an attorney going beyond his or her contractual obligations to a client in this context, especially if the attorney realizes that a former client may be at risk of losing an opportunity to obtain a modification of sentence based on a motion that has been held in abeyance.

of the minds between attorney and client that the attorney would be responsible for renewing the request for a hearing.[16]

Finally, a particular defendant's age, history, characteristics, or length of sentence may affect the analysis. If the defendant is young, inexperienced, and sentenced to a lengthy prison term (as was Moultrie), it may be unreasonable for an attorney to assume that no contact from the defendant means that the defendant is not interested in seeking a hearing and/or a ruling on the motion. On the other hand, if a defendant (like Franklin) is older, well educated, and has already served all of his active jail time, it may not be unreasonable for an attorney to assume that the defendant is uninterested in seeking a ruling on the motion, or will be pursuing such relief *pro se* or through new counsel.

The variables we have discussed are not meant to be an exhaustive list of factors a court should consider in assessing a claim of deficient performance in this context. There likely will be unique facts and circumstances in each such case concerning the particular attorney-client relationship that will inform the analysis of the attorney's reasonableness.

In sum, it is inappropriate to take a one-size-fits-all approach to resolving an ineffective assistance claim that an attorney performed deficiently by failing to request a hearing on a Rule 4-345(e) motion that had been held under advisement. When assessing

---

[16] In this regard, comments similar to those Moultrie's counsel made at his sentencing hearing ("maybe in a little while, in a few years, maybe *we* can hopefully come back and show the Court all the positive things you've done" and "maybe … down the road, *we* can hopefully have this matter brought back in") (emphasis added) and in the Rule 4-345(e) motion (requesting that the court hold the motion *sub curia*, and that the court later "[g]rant a hearing *upon petition of counsel*") (emphasis added), 240 Md. App. at 414-15, could be relevant to establish that a defendant reasonably believed his or her attorney would take the initiative in pursuing a hearing prior to the expiration of the five-year period.

any such claim, a post-conviction or *coram nobis* court should consider all of the specific circumstances of the case and decide whether the defendant has rebutted the strong presumption of reasonableness that applies to claims of deficient representation. *See, e.g., Borchardt*, 396 Md. at 603 (because of the difficulties inherent in evaluating counsel's conduct from counsel's perspective at the time, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

Ultimately, it is the defendant's decision, not the attorney's, whether and when to request a hearing after a motion for sentence modification has been taken under advisement. *See Grandison v. State*, 341 Md. 175, 202 (1995) ("[T]he defendant in a criminal case ordinarily has the ultimate decision when the issue at hand involves a choice that will inevitably have important personal consequences for him.") (cleaned up); *Flores-Ortega*, 528 U.S. at 479 (defendant's decision, not attorney's, to decide whether to note an appeal in a criminal case); *cf. Rich v. State*, 230 Md. App. 537, 551 n.5 (2016) (affirming denial of post-conviction ineffective assistance claim, where defendant introduced no evidence that he had asked his defense counsel to file a motion for modification of sentence). To be sure, an attorney can provide useful advice about whether it would be fruitful to request a hearing on a Rule 4-345(e) motion at a particular time in a particular case. And we expect that an attorney who filed a timely Rule 4-345(e) motion on behalf of a defendant generally will provide that advice if the defendant asks for it. Further, if the result of that consultation is that the defendant asks the attorney to make or renew a request for hearing on the motion, we expect the attorney in most cases will honor that request or at least assist the defendant in timely finding other counsel who can provide representation

30

with respect to further proceedings on the motion. However, because it ultimately is the defendant's decision whether and when to request a hearing, in many cases the attorney will not provide deficient representation if the attorney does not make such a request on his or her own initiative.

> b.  *Franklin Did Not Establish That Mr. Prien Performed Unreasonably.*

Appling the required circumstance-specific approach to this case, we agree with the *coram nobis* court's ruling that Franklin did not meet his burden to prove that Mr. Prien provided deficient representation.

Although Franklin testified at the *coram nobis* hearing that Mr. Prien did not tell him about the five-year period and that he remained unaware of the five-year period as late as October 2015 (when he filed his petition for expungement), the *coram nobis* court did not make a finding crediting Franklin's testimony on these points. Rather, the court stated: "Whether Mr. Prien told you about the five years or not, I have no reason to doubt you. I don't know. Um…he may not have." While the court thus was somewhat equivocal, we agree with the State that, if the court had been persuaded by Franklin's testimony, the court would not have said it did not "know" whether Mr. Prien told Franklin about the five-year period, or that Mr. Prien "may not have" done so. Also significant was the court's finding that Franklin was not "affected for five years" by his convictions, and that Franklin "never contacted the attorney until after" those five years had elapsed. These findings indicate that the court believed that Franklin's failure to ask Mr. Prien to renew the request for a hearing was due to Franklin not being affected by the convictions during the five-year period. This finding is not clearly erroneous. The court did not find that Franklin's failure to ask Mr.

31

Prien to try to secure a hearing was due in any way to Franklin not knowing that there was a five-year consideration period for the motion.

Further, after the 90-day period following Franklin's sentencing, Mr. Prien no longer represented Franklin in this case by operation of law. *See* pages 25-26 *supra* (discussing CJP § 6-407 and CP § 16-205). Mr. Prien was not required to track his former client's progress through the five-year period. It was Franklin, not Mr. Prien, who was best positioned to know what Franklin had done to "work for" a potential probation before judgment. Franklin did not inform Mr. Prien at any point during the five-year period that he had successfully completed his probation and had received multiple promotions at Essence. We also find it significant that Franklin was 35 years old at the time he was sentenced, was well educated, held a position of significant responsibility at his place of employment, and was sentenced to only 14 days of active jail time. Notably, Franklin had the wherewithal to attempt *pro se* to have his charges expunged. In short, Franklin differs significantly from defendants such as Moultrie.

In these circumstances, the Sixth Amendment and Article 21 did not require Mr. Prien, on his own initiative, to renew the request for a hearing on the motion for modification of sentence. In the absence of any effort on Franklin's part to move forward with the pending motion while things were going well for him, we cannot say that Mr. Prien acted unreasonably by also not taking any further action on the motion during the five-year period on his own initiative.

## B. The Prejudice Prong of the Ineffective Assistance Test

Although our ruling on the performance prong of the ineffective assistance of counsel standard requires us to affirm the denial of Franklin's petition for *coram nobis* relief, we will briefly address the prejudice prong as well.

In *Matthews v. State*, 161 Md. App. 248, 252 (2005), the Court of Special Appeals cogently discussed *Flansburg*'s implicit finding of *per se* prejudice when an attorney disregards a client's request to file a motion for reconsideration of sentence:

> Although the Court [in *Flansburg*] made no reference to the *Strickland* case or mention of the word "prejudice," it is clear that the Court implicitly concluded that Flansburg was prejudiced by the "loss of any opportunity to have a reconsideration of sentence hearing." We therefore make explicit what was merely, but clearly, implicit in *Flansburg:* The failure to follow a client's directions to file a motion for modification of sentence is a deficient act, and such a failure is prejudicial because it results in a loss of any opportunity to have a reconsideration of sentence hearing. Accordingly, when a defendant in a criminal case asks his attorney to file a motion for modification of sentence, and the attorney fails to do so, the defendant is entitled to the post conviction remedy of being allowed to file a belated motion for modification of sentence, without the necessity of presenting any other evidence of prejudice.

In *State v. Schlick*, we recently observed that Rule 4-345(e) not only affords a defendant the right to file a motion for modification; the Rule "also grants the circuit court revisory power over such a motion for five years from the date on which a defendant's sentence was originally imposed." 465 Md. 566, 585 (2019). Schlick's original trial counsel failed to file a motion for modification of sentence, despite Schlick's request that counsel do so. A post-conviction court granted Schlick the right to file a belated Rule 4-345(e) motion, which new counsel did on behalf of Schlick. The dispute in *Schlick* involved how long the circuit court had to rule on the belatedly filed motion. The State argued that

33

the circuit court lacked jurisdiction to revise Schlick's sentence after the original five-year period for revising the sentence under Rule 4-345(e) expired. Schlick contended that a new five-year period began to run from the date of the post-conviction order granting the right to file the belated Rule 4-345(e) motion. We agreed with Schlick, reasoning that the original failure by counsel to file a motion for modification not only denied Schlick the right to file a motion for modification of sentence; it also denied him the opportunity to have the court exercise its discretion consistent with its authority under Rule 4-345(e). *See Schlick*, 465 Md. at 585. Thus, we held, "to meaningfully restore Mr. Schlick's rights under the Rule, not only must Mr. Schlick be permitted to file a belated motion within 90 days of the postconviction court's order, but it follows that implicit in the postconviction court's grant of relief was the ability of the circuit court to exercise its revisory power over Mr. Schlick's motion for five years from the date of the postconviction court's order." *Id.*

In this case, the State argues that, even if Mr. Prien had provided deficient representation to Franklin by failing to renew the request for a hearing on the motion during the five-year period, there would have been no prejudice to Franklin because the motion was already on file. Thus, if Judge Harrington had decided to consider whether Franklin had sufficiently "worked for" a modification to probation before judgment, she could have set the motion in for a hearing on her own initiative. In contrast, in *Schlick* (as well as *Flansburg* and *Matthews*), the sentencing court had no motion before it to allow the court to exercise its discretion to modify the sentence.

The distinction the State draws between this case and cases like *Flansburg* and *Schlick* is immaterial for purposes of the prejudice analysis. By affirmatively asking the

circuit court to hold the motion under advisement, Mr. Prien caused Judge Harrington to put her exercise of discretion on hold. Although Judge Harrington could have set the motion in for a hearing on her own initiative before the five-year period ended, it is unrealistic to expect a circuit court judge to recall a particular motion that it held under advisement years earlier and decide to set it in for a hearing when nobody has asked the judge to do so. For this reason, to "meaningfully restore" the right of a defendant to receive the benefit of the sentencing court's exercise of discretion in this context requires that the defendant be permitted to advise the court that the defendant would like the court to set the motion in for a hearing. Thus, in a case where a court finds deficient performance in the failure of an attorney to request a hearing on a Rule 4-345(e) motion that has been held in abeyance, a post-conviction or *coram nobis* court generally should find the requisite prejudice under *Strickland* and provide the defendant with a reasonable opportunity to notify the court that the defendant wishes the court to rule on the motion. The post-conviction or *coram nobis* court also should allow the sentencing court a reasonable opportunity to hold a hearing (if it chooses to hold a hearing) and to rule on the motion. The sentencing court is under no obligation to hold a hearing after the defendant notifies the court that the defendant would like the court to take up the motion. A sentencing court always may deny a Rule 4-345(e) motion without holding a hearing. However, in this context, the "reasonable probability" of a different result, for purposes of prejudice, *see Strickland*, 466 U.S. at 694, is not the reasonable probability that the court will schedule a hearing, let alone ultimately grant the motion. Rather, the question is whether there is a reasonable probability that, had counsel not acted deficiently, the court would have

exercised its discretion one way or the other, and either conducted a hearing or denied the motion without a hearing, within the five-year period.

The State alternatively argues that Franklin failed to show prejudice – i.e., a substantial probability of a different outcome – because Judge Harrington would not have been able to modify Franklin's sentence to probation before judgment without the State's consent. The State claims that, in approving Franklin's plea, Judge Harrington agreed to a disposition under Rule 4-243 that included both a conviction and sentence, which would not include probation before judgment. Because there is evidence in the record that the State would not have consented to a modification to probation before judgment at a hearing on the Rule 4-345(e) motion, the State argues that Franklin cannot establish prejudice from the failure to hold such a hearing.

We disagree with the State for two reasons. First, we do not read Franklin's plea agreement to have foreclosed the sentencing court from imposing probation before judgment. The agreement stated that the "Court will: agree to an active CAP of sixty (60) days." The agreement then recited: "There is no other sentencing limitation except that provided by law." While this agreement, once approved by Judge Harrington, placed a ceiling on the amount of active jail time she could impose on Franklin, it did not foreclose her from ordering probation before judgment if she believed that was the correct disposition. To the contrary, we read the phrase "[t]here is no other sentencing limitation except that provided by law" to mean that all sentencing options were open to Judge Harrington except active time of more than 60 days. Probation before judgment is an option that a sentencing court has in most cases, including when sentencing someone for the

36

offenses to which Franklin entered his *Alford* plea. If the State had wanted to foreclose the Court from considering probation before judgment, it could have insisted that the agreement recite that "Court will: agree to an active CAP of sixty (60 days) and will not impose probation before judgment." The State did not do so. Nor did the State tell Judge Harrington at the plea hearing that it viewed the binding plea agreement to foreclose probation before judgment as a sentencing option. In addition, at the sentencing hearing, in its very brief allocution, the State did not argue that probation before judgment was prohibited. Rather, the State told Judge Harrington that it would "submit to your wisdom, your discretion." Mr. Prien then requested probation before judgment in his allocution, to which the State voiced no objection on the ground that probation before judgment would violate the terms of the binding plea agreement. In short, we believe that, if Judge Harrington had set Franklin's Rule 4-345(e) motion in for a hearing before the expiration of the five-year period, Judge Harrington could have granted a modification to probation before judgment without the State's consent.

Second, as discussed above, the "different outcome" for purposes of *Strickland* prejudice in this context is not the ultimate reduction of the sentence, or even the scheduling of a hearing, but rather the exercise of the court's discretion to decide whether to hold a hearing in the first place.[17] If counsel's deficient performance prevents a defendant from

---

[17] In no way do we mean to suggest that a defendant who pleads guilty under a binding plea agreement is entitled to a hearing on a motion for modification of sentence at some point before the five-year consideration period expires. Indeed, the court is under no obligation to hold any motion for modification of sentence under abeyance, let alone a motion seeking to undo a sentence that was the product of a binding guilty plea. A court

37

requesting a hearing on a Rule 4-345(e) motion that was previously held under advisement, a post-conviction or *coram nobis* court should "place the defendant in the position he would have been but for his counsel's ineffectiveness." *Schlick*, 465 Md. at 586. This requires the defendant to be able to request a hearing and for the court to be permitted to conduct a hearing, if it chooses to do so.[18]

_____

may deny a motion for modification of sentence without a hearing immediately after receiving it, if the court sees fit to do so.

[18] The Concurrence finds the prejudice analysis in this situation to be distinguishable from the *Flansburg/Matthews* analysis of prejudice that a defendant suffers when an attorney disregards a client's request to file a Rule 4-345(e) motion. We see no material distinction between these two situations. In both, the attorney's deficient performance prevents the defendant from receiving a ruling – favorable or unfavorable – on a motion for modification of sentence. Whether the deficient performance occurs at the very outset by not filing the motion, or later in the process by failing to request that the court take up the motion that the attorney previously asked the court to hold in abeyance, the ultimate harm to the defendant is the same: the loss of the opportunity to have the court exercise its discretion. It may well be that, in some cases, the sentencing court will deny the belated request for a hearing and the Rule 4-345(e) motion itself, either because the defendant has not made what the court considers to be a sufficient showing of post-sentencing rehabilitation, or for some other reason. As the Concurrence correctly notes, each such case is different. However, the sentencing court's belated denial of the motion in any such case is preferable to the failure to exercise discretion at all. By restoring the defendant to where he or she was prior to the attorney's deficient performance, a post-conviction or *coram nobis* court eliminates the harm caused by the deficient performance, no more and no less. It is still up to the defendant at that point to convince the sentencing court that the court should conduct a hearing on the motion.

## IV

## <u>Conclusion</u>

For the reasons discussed above, the *coram nobis* court correctly ruled that Franklin failed to prove that his attorney performed below constitutional standards and, therefore, was not entitled to *coram nobis* relief. Accordingly, we affirm the judgment of the Court of Special Appeals.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**

Circuit Court for Charles County
Case No. 08-K-09-000811
Argued: March 10, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 57

September Term, 2019

_____

SHAWN ALBERT FRANKLIN

v.

STATE OF MARYLAND

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Concurring Opinion by Watts, J., which Hotten
and Booth, JJ., join.

_____

Filed: August 13, 2020

Respectfully, I concur. I agree with the Majority and the State, Respondent, that Shawn Albert Franklin, Petitioner, failed to meet the burden of establishing ineffective assistance of counsel by failing to prove deficient performance. See Maj. Slip Op. at 3, 31. I write separately to explain that I would not address the prejudice prong or offer guidance that amounts to no more than unwarranted *dicta*. The matters that the Majority gives advice about are complicated issues raised as alternative theories by the State and are not necessary for the disposition of the case.

Where, as here, a petitioner for postconviction relief alleges ineffective assistance of counsel, the petitioner has the burden of proving that counsel's performance was deficient, and resulted in prejudice. See Strickland v. Washington, 466 U.S. 668, 687 (1984). It is well settled that, because a petitioner must satisfy both the performance and prejudice prongs to establish ineffective assistance of counsel, a court may elect to address only one of the two prongs if it concludes that the petitioner failed to satisfy that prong. See id. at 697. In Strickland, id., the Supreme Court explained:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.

Consistent with the Supreme Court's explanation in Strickland, id., this Court has concluded that a petitioner failed to satisfy the performance prong, and thus did not address the prejudice prong. See, e.g., State v. Sanmartin Prado, 448 Md. 664, 722 & n.13, 141 A.3d 99, 133-34 & n.13 (2016). Although the Majority should do the same, the Majority takes the needless step of addressing the prejudice prong. See Maj. Slip Op. at 33-38. The

Majority neither explains the purpose nor reason for covering the prejudice prong nor acknowledges the case law indicating that addressing the second prong of the analysis, *i.e.*, the prejudice prong, is unnecessary. See Maj. Slip Op. at 33. As such, the Majority gives unwarranted guidance without acknowledging that it is doing so. The Majority's discussion of the prejudice prong is nothing more than ill-advised *dicta*.[1]

In *dicta*, the Majority unnecessarily addresses issues related to the determination of prejudice in ineffective assistance of counsel cases and goes astray in multiple ways. First, the Majority advises that, "in a case where a court finds deficient performance in the failure of an attorney to request a hearing on a Rule 4-345(e) motion that has been held in abeyance, a post-conviction or *coram nobis* court generally should find the requisite prejudice under *Strickland* and provide the defendant with a reasonable opportunity to notify the court that the defendant wishes the court to rule on the motion." Maj. Slip Op. at 35. Next, the Majority advises:

> [T]he "reasonable probability" of a different result, for purposes of prejudice, *see Strickland*, 466 U.S. at 694, is not the reasonable probability that the court will schedule a hearing, let alone ultimately grant the motion. Rather, the question is whether there is a reasonable probability that, had counsel not acted deficiently, the court would have exercised its discretion one way or the other, and either conducted a hearing or denied the motion without a hearing, within the five-year period.

Maj. Slip Op. at 35-36. Finally, the Majority concludes that, because the original plea agreement included a sentencing range that permitted Franklin to request probation before

---

[1]Given that Section III.B of the majority opinion is unnecessary for a determination of the issue of ineffective assistance of counsel, the Majority's discussion of the prejudice prong of the Strickland analysis is no more than guidance or advice and, therefore, is referred to as such.

judgment, the court could have granted a modification of sentence without the State's consent.  See Maj. Slip Op. at 36-38.  Each of these pieces of *dicta* is potentially misguided and more importantly unwarranted.

As to the notion that prejudice generally results where an attorney has failed to request a hearing after a motion for modification of sentence has been held in abeyance, this strand of the Majority's *dicta* is contrary to the body of case law that requires a defendant to establish prejudice and conflates the holdings in State v. Flansburg, 345 Md. 694, 694 A.2d 462 (1997), and its progeny with this case.  It is well established that, to demonstrate ineffective assistance of counsel, generally, a petitioner has to prove deficient performance and prejudice.  See State v. Mann, 466 Md. 473, 490, 221 A.3d 965, 975 (2019) ("Generally, where a petitioner alleges ineffective assistance of counsel, the burden rests on him or her to satisfy both the performance prong and the prejudice prong." (Cleaned up)); see also Strickland, 466 U.S. at 687; United States v. Cronic, 466 U.S. 648, 658 (1984); Ramirez v. State, 464 Md. 532, 562, 212 A.3d 363, 381 (2019).  Satisfying the performance prong does not, with limited exceptions, result in prejudice being presumed.  See Ramirez, 464 Md. at 562, 212 A.3d at 381 ("[I]n certain Sixth Amendment contexts, prejudice is presumed.  For example, prejudice is presumed when counsel is burdened by an actual conflict of interest.  Additionally, actual or constructive denial of the assistance of counsel altogether is presumed to result in prejudice.  So are various kinds of State interference with counsel's assistance." (Cleaned up)).

To be sure, Flansburg, 345 Md. 694, 694 A.2d 462, Matthews v. State, 161 Md. App. 248, 868 A.2d 895 (2005), and State v. Schlick, 465 Md. 566, 214 A.3d 1139 (2019),

stand for the proposition that, where trial counsel fails to file a motion for modification of sentence after being requested to do so, prejudice generally flows from that failure because there is no opportunity for the defendant's modification request to be considered at all. The same cannot automatically be said about the failure of an attorney to follow up and request a hearing after filing a motion for modification of sentence. The analysis is more complicated because a motion for modification of sentence can be denied without a hearing, meaning that the failure to request a hearing does not necessarily result in prejudice.

It is clear that a court may review a motion for modification of sentence and determine to deny it on the papers—based on the motion and any opposition thereto—without holding a hearing and not run afoul of Maryland Rule 4-345. Thus, where an attorney fails to request a hearing after a motion for modification of sentence is held in abeyance, the guidance that a "court generally should find the requisite prejudice under *Strickland*[,]" Maj. Slip Op. at 35, does not apply because a hearing is not guaranteed or required to be held under Maryland Rule 4-345. There is no basis to conclude that in every case or "generally" a hearing would have been granted resulting in a reduction of sentence and thus the petitioner has been prejudiced. As the Majority acknowledges, there are many reasons that a judge may hold a motion for modification of sentence in abeyance and later deny the motion without a hearing; each case is different. See Maj. Slip Op. at 38 n.18. In some instances, the trial judge may hold a motion in abeyance but have already reviewed the motion and come to a conclusion that a hearing would not likely be granted, *i.e.*, the motion will be denied. In some instances, the petitioner/defendant does not fulfill

- 4 -

expectations or make improvements in behavior and there is no supplementation of the motion for modification of sentence in spite of a request that a hearing be held; and the motion will be denied. In some instances, it may be that the trial judge has not reviewed the motion and formed an opinion as to the merits of motion but has simply held the motion in abeyance as requested, and later denies the motion.

The *dicta* offered by the Majority essentially sets up a presumption of prejudice where a motion is held in abeyance and an attorney fails to request a hearing within the five-year period. If a motion is held in abeyance, however, as explained earlier, that does not necessarily mean that the court would have scheduled a hearing or granted the motion. The proof of prejudice is not that the motion was put on hold without a decision on a hearing being made, but rather the proof of prejudice is that the defendant demonstrates a reasonable probability of prevailing on the motion. In other words, the defendant should maintain the traditional burden of proving prejudice by a reasonable probability, *i.e.*, a substantial or significant possibility that the outcome or disposition of the motion would have been different. To give guidance otherwise lessens the defendant's burden of proving prejudice and is not consistent with this Court's existing case law.

At a minimum, although the Majority disputes the point, under its theory, a defendant should be required to show that under the circumstances of the case it was reasonably probable that a hearing would have been scheduled. Otherwise, where a motion for a modification of sentence is held in abeyance and a hearing is not requested within the five-year period, upon a finding of deficient performance, cases will be returned to the trial court without review of whether the holding of a hearing was even remotely likely. Under

these circumstances, where a case is returned to the circuit court and the request for a hearing is ultimately denied, a needless appeal may follow. Stated otherwise, the Majority recommends a process where prejudice will be generally found without a review of the case's circumstances (that may be apparent from the existing motion for modification or the petition for postconviction relief or elsewhere) and may result in unnecessary litigation.

As to the Majority's guidance that prejudice is not gauged by the reasonable probability that the court will schedule a hearing or grant the motion for modification, see Maj. Slip Op. at 35-36, the reality is that the outcome that Franklin ultimately seeks is a reduction in sentence, *i.e.*, the grant of the motion. Franklin's contention is essentially that the lack of trial counsel requesting a hearing prevented him from having the circuit court grant the request for a hearing and reduce his sentence. In support of its theory, though, that prejudice involves the loss of the opportunity to have the court exercise its discretion to schedule a hearing or not, the Majority states that "the sentencing court's belated denial of the motion in any such case is preferable to the failure to exercise discretion at all." Maj. Slip Op. at 38 n.18. Although Franklin obviously asks that the case be returned to the circuit court for consideration of whether to schedule a hearing, Franklin's contention as to a different outcome is not that the lack of trial counsel's requesting a hearing prevented the circuit court from considering his motion for modification of sentence and potentially denying it. In other words, Franklin is not seeking as an outcome the opportunity for the circuit court to issue a belated denial. The determination of prejudice should be based on a showing that there is a reasonable probability that, but for trial counsel's deficient performance, the outcome of the proceeding would have been different, *i.e.*, a reasonable

probability that the motion may have been granted or a hearing scheduled. This assessment differs from the *dicta* in the majority opinion. But, regardless of whether this assessment or the Majority's guidance is accurate or whether one or the other ultimately becomes a holding of this Court, it is not necessary for the guidance to be included in this case.

Likewise, the conclusion that the court was not required to have the State's consent to a modification of sentence to impose probation before judgment is unnecessary and is an issue that deserves more attention than a few paragraphs of *dicta*. The plea agreement permitted the circuit court to impose a sentence of a cap or ceiling of up to sixty days' incarceration; there was no floor. The Majority is correct that Franklin could have requested a sentence of probation before judgment at sentencing. Indeed, Franklin did so, and the circuit court rejected that request and imposed a sentence of fourteen days' incarceration. Maryland Rule 4-243(c)(3) provides: "If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement." It was not necessary at sentencing for the State to consent to a lower sentence because Franklin had the right to ask for probation before judgment. The plea agreement did not address, though, any position that the State would take with respect to a motion for modification of sentence and did not provide that the State would agree with a request for probation before judgment after sentencing. Franklin received the benefit of his plea bargain with the State at sentencing. It is an oversimplification to suggest that because the plea agreement bound the State at sentencing to a range that included probation before judgment that the State's

consent was not required before a modification of sentence could be granted. Yet, the Majority concludes in a paragraph that the circuit court could have reduced the sentence without the State's consent. The ultimate question of whether, under the circumstances of this case, Maryland Rule 4-243 would operate to require the State's consent before Franklin could be given a more favorable disposition on a motion for modification of sentence filed under Maryland Rule 4-345(e) should not be resolved in unnecessary *dicta*. This is not a clear-cut issue and certainly warrants closer examination.

Certainly, the State addressed the issue of prejudice and whether its consent was required before Franklin's sentence could be modified to probation before judgment, but the Majority has resolved the issue of ineffective assistance of counsel based on the performance prong. Nonetheless, the Majority has issued wide-ranging guidance in *dicta* on issues related to prejudice where the outcomes reflected in the *dicta* are less than clear. There is no need to do this and the Court may not wish to adhere to this *dicta* in the future when the issues are necessary for the disposition of a case.

Judge Hotten and Judge Booth have authorized me to state that they join in this opinion.